UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALYCE R. ANDERSON,

Plaintiff,

v.

NORTHWEST ILLINOIS AREA LOCAL
7140 and AMERICAN POSTAL WORKERS
UNION, AFL-CIO,

Defendants.

No. 1:24-CV-07083

Judge Edmond E. Chang

MEMORANDUM OPINION AND ORDER

Alyce Anderson alleges that the American Postal Workers Union, AFL-CIO and Northwest Illinois Area Local 7140 mishandled grievances she filed about her employment with the United States Postal Service and improperly disclosed her personal financial information. R. 6, Am. Compl. at 3–11.[1] She sues the Unions, alleging that they engaged in unfair labor practices in violation of 5 U.S.C. § 7116; discriminated against her in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; violated state privacy law and the Privacy Act of 1974, 5 U.S.C. § 552a; and contravened the Union Constitution, collective bargaining agreement, and duty of fair representation in violation of the Postal Reorganization Act, 39 U.S.C. § 1208(b). Am. Compl.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

at 3–11.[2] The Defendants move to dismiss, arguing that the Court lacks subject matter jurisdiction over some of Anderson's claims and that she fails to plausibly state the other claims. R. 50, Nat'l Union's Mot.; R. 53, Loc. Union's Mot. For the reasons explained in this Opinion, the dismissal motions are granted. The federal law claims are dismissed with prejudice, and jurisdiction over the state law claims is relinquished without prejudice to refiling in state court.

## I. Background

For the purposes of these motions, the Court accepts as true the factual allegations in Anderson's Amended Complaint and draws all reasonable inferences in her favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (per curiam)).

Anderson worked for the United States Postal Service and was a member of the postal union. Am. Compl. at 2. In 2021, she filed an Equal Employment Opportunity complaint (which the parties call an EEO complaint) alleging that the Postal Service denied her request for reasonable accommodation.[3] *See* R. 6, Exhs. 5–7, Anderson Witness Statement. According to Anderson, after she filed the EEO complaint, Postal Service employees created fraudulent documents to avoid compensating her

---

[2]Except as otherwise explained in this Opinion (on the unfair labor practices claim), the Court has subject matter jurisdiction over Anderson's federal law claims under 28 U.S.C. § 1331, and supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367(a).

[3]It is unclear whether Anderson made internal complaints with the Postal Service or filed a complaint with the Equal Employment Opportunity Commission. *See* Am. Compl. at 4 (referencing the Postal Service's "EEO Department"); *id.* at 8 (discussing an "EEOC Conference"). In any event, the Court's analysis in the Opinion is the same.

for the denial of her requested accommodation. Am. Compl. at 4; Anderson Witness Statement. She then filed a grievance with the American Postal Workers Union (which the Court will call the National Union) based on this alleged creation of fraudulent documents. Am. Compl. at 4; *see* Anderson Witness Statement. In August 2022, Craig Fisher and Heather Ash—representatives for the National Union and the Postal Service, respectively—agreed to hold the grievance (numbered CM222-186) in abeyance pending the resolution of Anderson's related EEO complaint. Am. Compl. at 3–4; R. 6, Exh. 13, Abeyance Decision. Jackie Engelhart, president of Northwest Illinois Area Local 7140 (which the Court will call the Local Union), sent Anderson a copy of the abeyance decision. Am. Compl. at 3; R. 6, Exh. 8, Fax to Englehart. A few months later, Anderson filed another grievance with the National Union disputing the decision to hold grievance CM222-186 in abeyance. R. 6, Exhs. 21–23, Nov. 2022 Grievance.

In July 2022, Anderson filed a different grievance with the National Union alleging that she was wrongfully denied a transfer to South Bend, Indiana. R. 6, Exh. 35, Grievance Appeal. She also filed several EEO complaints about the same issue. Am. Compl. at 7. When her grievance (numbered CM222-248) was pending, Fisher asked Engelhart if Anderson would be willing to withdraw her EEO complaints if the Postal Service granted the transfer and paid backpay for the time she missed. R. 6, Exh. 37, Settlement Email. Engelhart presented the settlement offer to Anderson. Am. Compl. at 6–7. But Anderson declined to settle because Fisher described the settlement terms in an email, rather than providing a formal settlement agreement. *Id.*

3

at 7–8; R. 6, Exh. 38, Settlement Offer Email; R. 6, Exh. 50, Rejection Email. Shortly thereafter, grievance CM222-248 was denied. R. 6, Exhs. 33–34, Grievance Denial. Fisher appealed the grievance to arbitration on Anderson's behalf. R. 6, Exh. 32, Appeal Letter. Anderson says that she was not notified about the arbitration until much later, but she was able to intervene and settle the grievance. Am. Compl. at 8–9. She filed another grievance with the National Union based on these events. Exhs. 24–26, Dec. 2022 Grievance.

In December 2022, the National Union notified Anderson that her grievances about these two events—the decision to hold grievance CM222-186 in abeyance and Fisher's attempts to settle grievance CM222-248—were dismissed. Am. Compl. at 5–6; R. 6, Exh. 27, Dismissal Letter. The union representative explained that Anderson's allegations could not "be pursued through Article 15" of the Union Constitution, "as they do not allege that [] Fisher interfered with [her] rights as a member of the" National Union. Dismissal Letter. The representative also told Anderson that she had the right to appeal the decision. *Id.*

Several years later, in a different suit between Anderson and the Defendants, the parties disputed whether Anderson qualified for *in forma pauperis* status. Am. Compl. at 10; *see also Anderson v. Am. Postal Workers Union, AFL-CIO*, 2024 WL 4723618, at *3–5 (N.D. Ill. Nov. 8, 2024). To demonstrate that Anderson did not qualify, counsel for the National Union filed financial documents and affidavits with the Court. Am. Compl. at 10. Anderson filed yet another grievance with the National

4

Union in 2024 about this disclosure of her financial information. R. 6, Exhs. 51–53, June 2024 Grievance.

Anderson now brings a slew of claims against the Defendants based on (1) the decision to hold grievance CM222-186 in abeyance, (2) the denial of her subsequent grievance about that decision, (3) the attempts to settle grievance CM222-248, and (4) the disclosure of her financial information in the prior suit.

## II. Legal Standard

A Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction, *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999), whereas a Rule 12(b)(6) motion tests the sufficiency of the complaint, *Hallinan*, 570 F.3d at 820; *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In order to survive a Rule 12(b)(1) motion, the petitioner must establish that the district court has subject matter jurisdiction. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds*, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "If subject matter jurisdiction is not evident on the face of the complaint, [then] the ... Rule 12(b)(1) [motion is] analyzed [like] any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the

defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. Unfair Labor Practices

Anderson alleges that the Defendants committed unfair labor practices in violation of 5 U.S.C. § 7116(b)(2)–(5). Am. Compl. at 5–6, 9, 11. But the Federal Labor Relations Authority has exclusive jurisdiction over charges of unfair labor practices brought under 5 U.S.C. § 7116. 5 U.S.C. §§ 7103(a)(6), 7118(a); *Karahalios v. Nat'l Fed'n of Fed. Emps., Loc. 1263*, 489 U.S. 527, 532–33 (1989). The Court thus lacks subject matter jurisdiction over this claim, and it is dismissed under Civil Rule 12(b)(1).

### B. Rehabilitation Act

Next, Anderson contends that the Defendants discriminated against her because of her disability in violation of the Rehabilitation Act. Am. Compl. at 3, 5–6, 9–11. To adequately state a Rehabilitation Act claim, Anderson must plausibly allege that "(1) she is disabled within the meaning of the statute; (2) that she was otherwise qualified for the job in question; (3) that she was discharged or the subject of other adverse action solely because of her disability; and (4) the employment program of which her job was a part received federal financial assistance." *Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016); *see also* 29 U.S.C. § 794(a). But as the National Union notes, R. 51, Nat'l Union's Br. at 5–6, the Amended Complaint fails to allege that either the National or Local Union receive federal funds, *see generally* Am. Compl. And Anderson's response brief does not explain how she has adequately alleged this element of the claim. *See generally* R. 59, Pl.'s Resp. Br. For this reason

alone, Anderson fails to state a Rehabilitation Act claim against Defendants. *See Cesca v. W. Ill. Univ. Bd. of Trs.*, 716 F. Supp. 3d 696, 706 (C.D. Ill. 2024).

What's more, Anderson fails to allege any facts that plausibly suggest that the Defendants acted with discriminatory intent. She alleges that she has a disability and that the Defendants mishandled her grievances, but does not plead facts to suggest that the Defendants mishandled her grievances *because of* her disability. *See* Am. Compl. at 3–10. The same is true for her allegations about the disclosure of her financial information. *See* Am. Compl. at 10–11. For instance, Anderson does not allege that Fisher or Engelhart made comments about or acted with hostility towards her disability. *See Winkfield v. Chi. Transit Auth.*, 435 F. Supp. 3d 904, 911–12 (N.D. Ill. 2020). To be clear, there is no rigid formula for pleading a disability discrimination case, and the Court does not require Anderson to allege any particular facts to state her claim. *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 765 (N.D. Ill. 2020). But the absence of *any* facts suggesting discrimination is fatal to Anderson's Rehabilitation Act claim. The Rehabilitation Act claim is thus dismissed under Civil Rule 12(b)(6) for failure to state a claim.

### C. Title VII

Anderson also brings claims for race discrimination, a hostile work environment, and retaliation under Title VII. Am. Compl. at 3, 5–6, 9–11. To adequately state a discrimination claim, Anderson must allege (among other things) that she suffered an adverse employment action because of her race. *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017). Her race discrimination claim fails for the same reason as her

disability discrimination claim: Anderson pleads no facts to suggest that she was treated differently by the Defendants because of her race or that the Defendants acted with discriminatory intent. *See generally* Am. Compl.

Anderson similarly fails to state a hostile work environment claim. "To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on her [protected status]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). Here, Anderson alleges that the Defendants mishandled her grievances and disclosed her financial information. *See generally* Am. Compl. These actions do not constitute harassment, let alone severe or pervasive harassment. Anderson also does not plead any facts suggesting that the Defendants took these actions—even if they constituted harassment—because of her race. *See generally id.* She thus fails to state a plausible hostile work environment claim.

Finally, Anderson does not adequately state a retaliation claim. "To plead a Title VII retaliation claim, a plaintiff must … allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Huri*, 804 F.3d at 833. The Amended Complaint says that the Defendants retaliated against Anderson for filing EEO complaints. Am. Compl. at 5. Filing an EEOC complaint about discrimination is a protected activity. *Miller v. Chi. Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021). But Anderson does not plausibly allege

that the Defendants retaliated against her *because* she filed the EEO complaints. *See generally* Am. Compl. Instead, the facts alleged in the Amended Complaint suggest that the Defendants handled her grievances in tandem with her EEO complaints. *See* Abeyance Decision (holding grievance in abeyance so that Anderson's reasonable-accommodation claim can first be addressed through her EEO complaint); Settlement Offer Email (offering to remedy the denial of Anderson's transfer to resolve her EEO complaints and grievances). The Amended Complaint otherwise makes only conclusory allegations that Anderson experienced retaliation, which are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678–79. Anderson's Title VII claims are thus dismissed for failure to adequately state a claim.[5]

### D. Union Constitution

Anderson next alleges that the Defendants violated several provisions of the American Postal Workers Union Constitution. Am. Compl. at 5–6, 9, 11. Under Section 301(a) of the Labor Management Relations Act, a union member can sue the union (as a third-party beneficiary) for violations of intraunion contracts or contracts with the member's employer, such as the union constitution and collective bargaining

---

[5]The Defendants also argue that Anderson's Rehabilitation Act and Title VII claims should be dismissed for failure to exhaust. Nat'l Union's Br. at 6–7; R. 54, Loc. Union's Br. at 15. Under both statutes, "plaintiffs must exhaust administrative remedies and cannot bring claims in the lawsuit not in the" EEO complaint. *McHale v. McDonough*, 41 F.4th 866, 869 (7th Cir. 2022); *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1320 (7th Cir. 1984). Because the Court concludes that Anderson fails to state a claim under either statute, it does not opine on exhaustion further. But it is worth noting that Anderson does not allege that she filed an EEO complaint about the mishandling of her grievances or disclosure of her financial information. *See generally* Am. Compl. And because the deadline to bring an EEOC charge based on these events has passed, *see* 42 U.S.C. § 2000e-5(e) (300-day deadline), failure to exhaust is likely another insurmountable obstacle to the Rehabilitation Act and Title VII claims.

agreement. *Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 99–101 (1991); *see* 29 U.S.C. § 185(a). The Postal Reorganization Act extends this cause of action to postal union members. *See* 39 U.S.C. § 1208(b).

Anderson contends that the events outlined in the Amended Complaint violate Article 15 § 1(c) and (d) of the Union Constitution. Am. Compl. at 5–6, 9, 11. These sections provide that union officers and members may be disciplined for "[v]iolating the right of members to be free from discrimination on the basis of race, color, creed, sex, sexual orientation, gender identity or gender expression, nationality, handicap, political affiliation, age, or religion," or "[e]ngaging in conduct that would expose the [National Union] to civil liability." R. 51-1, Exh. A, Union Const. Art. 15 § 1(c)–(d).[6]

### 1. Failure to Exhaust

The Defendants note that Anderson does not allege that she exhausted the union's internal administrative procedures for the first two grievances described in the Amended Complaint (about the decision to hold grievance CM222-186 in abeyance and attempts to settle grievance CM222-248). Nat'l Union's Br. at 8–9; Loc. Union's Br. at 7–8. Specifically, Article 15 of the Union Constitution includes the right to appeal the dismissal of a member's charge. Union Const., Art. 15 § 4. But the

---

[6]Anderson attaches the Constitution to her Amended Complaint, *see* R. 6, Exh. 66, but the Court cites the version provided by the National Union because it contains additional relevant excerpts. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (considering additional excerpts of a contract attached to a motion to dismiss where plaintiff attached the contract to the complaint and it was central to plaintiff's claim).

Amended Complaint does not allege that Anderson appealed the dismissal of either grievance. *See generally* Am. Compl.

Even so, failure to exhaust internal union procedures does not always warrant dismissal. *Stevens v. Nw. Ind. Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 731 (7th Cir. 1994). "[F]ailure to exhaust is normally considered to be an affirmative defense," so plaintiffs are not required to plead facts to prove exhaustion in their complaint. *Mosely v. Bd. of Educ. of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006). But in the union context, exhaustion is more strictly enforced to encourage "private resolution of disputes, responsible union self-regulation, union assistance in the interpretation of its governing document, [and] robust union processes …." *Stevens*, 20 F.3d at 732. At the same time, it is sometimes futile for union members to exhaust internal union procedures. *See id.* at 732–33. As such, "whether to dismiss a section 301 suit for failure to exhaust internal union remedies is one committed to the district court's discretion," informed by the following three factors:

> (1) whether the union has manifested such hostility to the plaintiff's grievance as to render exhaustion of his internal appeal rights futile, (2) whether the internal union appeals procedures are inadequate either to reactivate the grievance or to result in complete relief to the plaintiff, and (3) whether demanding exhaustion would cause undue delay in the resolution of the plaintiff's complaint.

*Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 805 (7th Cir. 2008).

Here, the factors favor dismissal of Anderson's claims for failure to exhaust. She does not allege in her Amended Complaint, and makes no argument in her response brief, that the Defendants are so hostile that an appeal of her grievances

12

would be futile. *See generally* Am. Compl.; Pl.'s Resp. Br. Nor does she explain why the appeals procedure would inadequately afford her relief or cause undue delay in resolving her complaints. *See generally* Pl.'s Resp. Br. For instance, Anderson does not argue that her appeal would be ignored or unadjudicated. Indeed, the letter dismissing Anderson's two grievances informed her of her right to appeal. Dismissal Letter. And Fisher did, in fact, appeal grievance CM222-248 to arbitration. Appeal Letter. Thus, the facts alleged in the Amended Complaint do not suggest that exhaustion would have been futile.

What's more, Anderson's response brief raises no additional, concrete facts that she would re-plead to show exhaustion. She says that she "did exhaust every avenue known to [her] to try and resolve [her] grievance complaints," Pl.'s Resp. Br. at 12, but that statement is wholly conclusory. So there is no reason to believe that discovery would produce evidence that Anderson appealed her grievances. The Court thus dismisses Anderson's claims that the mishandling of her grievances violated the Union Constitution for failure to exhaust.

Anderson also failed to exhaust her claims about the violation of the Union Constitution against the Local Union specifically because she did not name Engelhart, the Local Union's president, in any of her grievances (including her third grievance in 2024 about the disclosure of her financial information). *See* Loc. Union's Br. at 7–8. Each grievance listed only Fisher—a representative for the National Union, not the Local Union—as the member charged. *See* Nov. 2022 Grievance; Dec. 2022 Grievance; June 2024 Grievance. And the grievances about the decision to hold

13

grievance CM222-186 in abeyance and the disclosure of Anderson's financial information do not even mention Engelhart or the Local Union. *See* Nov. 2022 Grievance; June 2024 Grievance. The other grievance (about the settlement offer) mentions Engelhart, but only to say that she communicated the settlement offer to Anderson. Dec. 2022 Grievance. Because the grievances did not charge the Local Union or its representatives with any violations of the Union Constitution, Anderson failed to exhaust the internal union procedures with respect to the Local Union. The Court also dismisses Anderson's claim as to the Local Union on that basis.

### 2. Failure to State a Claim

In any event, even if Anderson did allege that she properly exhausted her grievances, she fails to state a violation of the Union Constitution. Article 15 § 1(c) prohibits violating the right to be free from discrimination. Union Const. But as described earlier in this Opinion, Anderson does not allege any facts that suggest she experienced discrimination. Article 15 § 1(d) prohibits "[e]ngaging in conduct that would expose the [National Union] to civil liability." Union Const. As demonstrated throughout this Opinion, Anderson does not articulate how any of the conduct described in the Amended Complaint would expose the National Union to civil liability. *See generally* Am. Compl.; Pl.'s Resp. Br.

Also, the National Union established (with no dispute from Anderson) that Anderson was no longer a union member in 2024 when she filed her grievance about the

14

disclosure of her financial information. *See* R. 51-2, Exh. B, Aug. 2024 Letter.[7] Anderson does not dispute this fact. *See generally* Pl.'s Resp. Br. Because only members are beneficiaries of the Union Constitution, Anderson cannot bring a claim for a violation of the Constitution based on actions that occurred when she was not a member. *See Korzen v. Loc. Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 289 (7th Cir. 1996) (describing how non-members cannot bring claims for violations of a union constitution because they are not beneficiaries of the contract). She thus also fails to state a claim for a violation of the Constitution based on the disclosure of her financial information. *See* Nat'l Union's Br. at 8–9. Anderson's claim premised on the Union Constitution is dismissed for failure to state a claim.

### E. Collective Bargaining Agreement

Anderson also contends that the Defendants violated several provisions of the collective bargaining agreement. Am. Compl. at 5–6, 9, 11. But she fails to state a claim for two reasons. First, if a plaintiff claims that the union owes them a particular duty based in the collective bargaining agreement, then she "must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees." *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 374 (1990). Anderson

---

[7]Because Anderson refers to the June 2024 grievance in her Amended Complaint and alleges that it was not properly "prosecute[d]," Am. Compl. at 10, the Court may consider the letter in which the National Union declined to recognize the grievance because she was not a union member, *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (describing how courts can consider documents attached to motions to dismiss that are referenced in the complaint and central to the plaintiff's claim); *see also 188 LLC*, 300 F.3d at 735.

points to no provision of the collective bargaining agreement that "creates rights directly enforceable by the individual employees against the Union." *Id.*; *see generally* Am. Compl. That failure alone means that Anderson has not stated a claim for a violation of the collective bargaining agreement.

Second, even if Anderson could bring a claim for violations of the collective bargaining agreement, she fails to plausibly allege that the Defendants violated the agreement. The Amended Complaint says that the Defendants violated three provisions: Article 2 § 1, which prohibits discrimination "against employees because of race, color, creed, religion, national origin, sex (including pregnancy), age, or marital status"; Article 14, which is a health and safety provision; and Article 15, which defines grievances and sets forth the grievance procedure steps. Am. Compl. at 5; R. 6, Exhs. 69–71, CBA. As described previously, Anderson does not plausibly allege that she experienced any discrimination, so she fails to state a claim for a violation of Article 2 § 1. Anderson does not attach or further describe Article 14, *see* Am. Compl. at 5, so it is unclear what the provision even protects. In any event, she does not allege any facts that suggest a health or safety violation.

Finally, Anderson does not plausibly allege any violations of the grievance procedure steps. As described previously, Anderson was offered the opportunity to appeal after her grievances were denied, Dismissal Letter, which she apparently did not pursue. And Anderson does not explain why any of the other steps taken by the Defendants violate the grievance procedure outlined in the collective bargaining agreement. For example, she does not point to a provision in the agreement that prohibits the

16

National Union from holding a grievance in abeyance pending the resolution of a related EEO complaint. Nor does she explain how attempting to settle a grievance violates the grievance procedures. Anderson thus fails to state a claim for any violation of the collective bargaining agreement, and the claim is dismissed.

### F. Duty of Fair Representation

Anderson also alleges that the Defendants violated the duty of fair representation. Am. Compl. at 5–6, 9, 11. Members may sue their union for breaching this duty under Section 301 of the Labor Management Relations Act, and the Postal Reorganization Act extends these claims to postal union members. *See Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 891 & n.1 (7th Cir. 2010); 39 U.S.C. § 1208(b). A breach of the duty of fair representation "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 470 (7th Cir. 2020) (cleaned up).[8]

The first question is whether Anderson has plausibly alleged that the Defendants' conduct was arbitrary. "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Taha*, 947 F.3d at 470 (cleaned up). "A charge of arbitrary union conduct requires an objective inquiry,

---

[8]Anderson also asserts a claim for breach of fiduciary duty. *See* Am. Compl. at 5–6, 9, 11. But because the "duty of fair representation is … akin to the duty owed by other fiduciaries to their beneficiaries," *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74 (1991), this claim is redundant with her claim for breach of the duty of fair representation. So even assuming without deciding that Anderson can bring a separate claim for breach of fiduciary duty, it rises—and falls, in this case—with her duty-of-fair-representation claim.

17

and [the Court] appl[ies] an extremely deferential standard to the union's strategic choices." *Id.* (cleaned up). "At the pleading stage, [Anderson] need not prove that the union acted irrationally; that said, [s]he must include enough details … to present a story that holds together." *Id.* (cleaned up).

Anderson fails to do so. First, she alleges that the Defendants chose to hold grievance CM222-186 in abeyance pending the resolution of her related EEO complaint. Am. Compl. at 3–5. Anderson argues that the decision was arbitrary because "[w]hatever the US Postal Service EEO department decides to do or not to do, has NO basis or relevance on the outcome of an employee grievance complaint." Pl.'s Resp. Br. at 6. But that is not quite right. Although the EEO complaint and grievance initiated separate proceedings, both complaints presented the same issue: the alleged denial of Anderson's reasonable accommodation request. *See* Nov. 2022 Grievance. "The union's decision to preserve its resources and allow the [EEO office] to address the allegations" before adjudicating Anderson's grievance "was not so far outside a wide range of reasonableness as to be irrational." *Matthews v. Milwaukee Area Loc. Postal Workers Union, AFL-CIO*, 495 F.3d 438, 442 (7th Cir. 2007) (cleaned up). And because the decision to hold Anderson's grievance in abeyance was not arbitrary, the National Union also did not act arbitrarily by dismissing Anderson's subsequent grievance about the abeyance decision. *See* Dismissal Letter.

Second, Anderson alleges that the Defendants tried to settle her next grievance—about the denial of her transfer to Indiana—in exchange for her dropping her EEO complaints about the same issue. Am. Compl. at 6–9. But "a union does not

18

breach its duty of fair representation … merely because it settled the grievance short of arbitration." *Vaca v. Sipes*, 386 U.S. 171, 192 (1967). Unions have broad discretion to settle grievances to save time and money. *Id.* at 191. Thus, the Defendants' attempt to settle Anderson's grievance was not, in and of itself, arbitrary. And Anderson does not articulate any reason why the terms of the settlement offer were arbitrary, either. *See* Am. Compl. at 6–9. Indeed, it appears that the Defendants obtained favorable settlement terms for Anderson: she would obtain the transfer that she had sought and receive her back pay. Settlement Offer. At worst, Anderson alleges that these terms were not memorialized in a formal agreement. *See* Pl.'s Resp. Br. at 8–9. But that does not rise to the level of irrationality or arbitrariness needed to state a claim.

What's more, after Anderson rejected the settlement offer, the Defendants continued to appeal her grievance to arbitration. Appeal Letter. Thus, the settlement talks had no adverse impact on the ultimate adjudication of her grievance. Anderson's only other allegation of wrongdoing related to this grievance is that she was not initially informed about the arbitration. Am. Compl. at 8–9. At most, the failure to timely notify Anderson of the arbitration was negligent, so it does not support a claim for breach of the duty of fair representation. *See Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369–70 (7th Cir. 2003).

Third, Anderson alleges that the Defendants disclosed her private financial information in a prior suit. Am. Compl. at 10–11. But as previously mentioned, Anderson was no longer a union member at that time. Aug. 2024 Letter. "Because the duty of fair representation is imposed on the union as a result of its position as

19

exclusive bargaining representative, it applies only to union conduct arising from the union's position as representative." *Distler v. United Mine Workers of Am.*, 711 F.2d 76, 79 (7th Cir. 1983). Because Anderson was not represented as a union member by the Defendants at the time they disclosed her financial information, she cannot bring a duty-of-fair-representation claim against them on that basis.

Anderson similarly fails to plausibly allege any discriminatory or bad-faith conduct to support her claim. "Determining whether a union's conduct is discriminatory or in bad faith involves a subjective inquiry." *Sullers v. Int'l Union Elevator Constructors, Loc. 2*, 141 F.4th 890, 899 (7th Cir. 2025). Under either path, "the plaintiff must prove that the union acted (or failed to act) due to an improper motive." *Id.* (cleaned up). "Improper motives are obviously irrelevant and invidious, and include, for example, distinctions based on race or sex." *Id.* (cleaned up). As described earlier in this Opinion, Anderson does not plausibly allege that any of the Defendants' conduct was discriminatory. She does allege—in a conclusory manner—that Fisher acted with improper motive. *See, e.g.*, Am. Compl. at 4 ("Fisher DID NOT want Plaintiff to receive any financial compensation owed, so union officials REFUSED to prosecute Plaintiff's grievance and negotiate in good faith a monetary settlement agreement ...."). But she fails to detail any concrete facts to support these conclusory allegations. Indeed, Fisher continued to represent Anderson after she filed numerous grievances against him, which suggests that he was not hostile towards her. *See Melendy v. U.S. Postal Serv.*, 589 F.2d 256, 259 (7th Cir. 1978) (finding no evidence that a union representative was hostile towards plaintiff because the representative

20

continued to prosecute his grievances). And allegations about "one official's conduct does not support a finding that the Union was improperly motivated in its handling of" Anderson's grievances. *Sullers*, 141 F.4th at 901.

Also, the Local Union again notes that, even if Anderson alleged conduct that violates the duty of fair representation, none of her allegations involve Engelhart or the Local Union. Loc. Union's Br. at 9–10. As described previously, Anderson alleges only that Engelhart was a go-between, passing along the decision to hold her grievance in abeyance and the settlement offer from Fisher. Am. Compl. at 4, 6–7. Engelhart's passive conduct is not arbitrary, discriminatory, or made in bad faith. So Anderson specifically fails to state a claim against the Local Union.

In sum, Anderson fails to allege sufficient concrete facts to suggest that any of the Defendants' conduct was arbitrary, discriminatory, or in bad faith. She thus fails to adequately state a claim for a violation of the duty of fair representation.[9]

### G. Privacy Act

Finally, Anderson alleges that the Defendants violated the Privacy Act of 1974 by disclosing her financial information. Am. Compl. at 10–11. But the Act applies

---

[9]The National Union points out that any duty-of-fair-representation claim based on conduct that occurred before February 2, 2024, is time barred. Nat'l Union's Br. at 11; *see Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 301–03 (7th Cir. 1983) (describing how a six-month statute of limitations applies to duty-of-fair-representation claims); R. 1, Compl. (filed on August 2, 2024). Because the Court dismisses this claim under Civil Rule 12(b)(6), it need not decide this issue. But the Court notes that, besides the disclosure of Anderson's financial information, all of the conduct described in the Amended Complaint took place before 2024. *See* Am. Compl. at 3–9. So the statute of limitations presents another impassable barrier to Anderson's duty-of-fair-representation claim.

only to federal agencies. *See* 5 U.S.C. § 552a(f)(1), (i)(1); *Ely v. Dep't of Just.*, 610 F. Supp. 942, 945 (N.D. Ill. 1985). Anderson has not alleged that the Defendants are federal agencies. *See generally* Am. Compl. The Court thus dismisses Anderson's Privacy Act claim for failure to state a claim.

As the Court will explain next, it dismisses all of Anderson's federal claims with prejudice, so it relinquishes supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (explaining that "[w]hen federal claims drop out of the case," the trial court has "broad discretion to decide whether to ... relinquish supplemental jurisdiction over the state-law claims"—with a "general presumption in favor of relinquishment").[10] Thus, to the extent that Anderson asserts state law privacy claims, *see* Am. Compl. at 10–11, they are dismissed without prejudice.

## H. Leave to Amend

In general, "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

---

[10]No party argues that the Court has original jurisdiction over the state law claims. *See, e.g.*, Nat'l Union's Br. at 6 n.5. And the Court likely does not have diversity jurisdiction over the state law claims because Anderson appears to be an Indiana citizen, and the National Union, which represents members across the country, is likely also a citizen of Indiana. *See* Am. Compl. at 11; *Ind. Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 316 (7th Cir. 1998) (describing how labor unions are citizens of each state in which their members are citizens).

But "[w]here it is clear that the defect cannot be corrected so that amendment is futile," the Court may "deny leave to amend and … enter an immediate final judgment." *Runnion*, 786 F.3d at 520.

Here, the circumstances counsel against granting Anderson leave to amend. It is true that this is the first time that the Court has dismissed Anderson's pleading. But Anderson already filed two prior pleadings at the outset of this case, the latter of which is under consideration in this Opinion. *See* Compl.; Am. Compl. Even more importantly, she previously filed another suit against the Defendants with nearly identical claims. *See* R. 10, Minute Order (describing how the claims in this case overlap with the claims in a previous case). Anderson voluntarily dismissed the prior case after the Defendants filed motions to dismiss, *see Anderson v. Am. Postal Workers Union AFL-CIO*, 1:23-cv-01117, R. 27, First Mot. to Dismiss; R. 50, Second Mot. to Dismiss; R. 52, Third Mot. to Dismiss; R. 69, Voluntary Dismissal Mot, and then brought this suit. So Defendants have faced these allegations since 2023, while Anderson has had three chances to try to state a claim (two of which came after she saw the dismissal arguments raised by the Defendants). The fact that Anderson has repeatedly attempted to state a claim against the Defendants, yet has failed to do so, shows that further amendment would be futile. *See Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007).

What's more, nothing in Anderson's response brief suggests that she will be able to cure the defects in the Amended Complaint. Indeed, Anderson does not even request leave to amend in her brief. *See generally* Pl.'s Resp. Br.; *Runnion*, 786 F.3d

23

at 519 (describing how "giving leave to amend freely is especially advisable when such permission is sought"). The Local Union describes a few "new" allegations that Anderson makes in her response brief. *See* R. 60, Loc. Union's Reply Br. at 6–7. But it not clear that these allegations are new. And even if they are, and Anderson included them in a second amended complaint, they would not help the amended pleading survive a motion to dismiss.

First, the Local Union contends that Anderson makes new allegations that Defendants refused to provide documentation of the terms of the settlement offer. Loc. Union's Reply Br. at 7 (quoting Pl.'s Resp. Br. at 8). But Anderson made these allegations in her Amended Complaint. Am. Compl. at 7–8. In any event, earlier in this Opinion, the Court considered these allegations and concluded that they did not establish a violation of Title VII, a breach of the duty of fair representation, or any other claim. *See supra* Section III.C, F.

Second, the Local Union says that Anderson asserts for the first time that her "FMLA conditions and disability's [sic] were well documented" and Defendants were "fully aware of Plaintiff's disability's [sic] and health issues." Loc. Union's Reply Br. at 7 (quoting Pl.'s Resp. Br. at 6). But Anderson already alleged that she had a disability in her Amended Complaint. Am. Compl. at 3 (describing how Anderson suffers from PTSD, anxiety, depression, and panic attacks). Even if she were to allege in a second amended complaint that the Defendants were aware of her disability, her Rehabilitation Act claim would still fail because she (1) cannot plausibly plead that Defendants receive federal funds and (2) has repeatedly failed to allege any concrete

facts suggesting discriminatory intent. *See supra* Section III.B. Similarly, such an allegation would not save her claims about the violations of the Union Constitution, collective bargaining agreement, and duty of fair representation because she has not alleged any facts suggesting that the Defendants acted in a discriminatory manner. *See supra* Section III.D–F. Each of those claims fail for other, independent reasons, too (failure to exhaust, failure to allege an individual right to sue for violations of the collective-bargaining agreement, and the statute of limitations, respectively). *See id.* Thus, even the "new" allegations that the Local Union identifies would not help Anderson state a claim against the Defendants. Because amendment would be futile, Anderson's federal law claims are dismissed with prejudice.

## IV. Conclusion

The motions to dismiss, R. 50; R. 53, are granted. Anderson's federal law claims are dismissed with prejudice. The Court relinquishes jurisdiction over the state law claims, which are dismissed without prejudice to refiling in state court.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2026

25